IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JEFF SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:05-0274 |
| | ) | Judge Trauger |
| METROPOLITAN GOVERNMENT OF | ) | Magistrate Judge Brown |
| NASHVILLE AND DAVIDSON COUNTY, | ) | |
| TENNESSEE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM and ORDER**

On December 14, 2007, the Magistrate Judge issued a Report and Recommendation, recommending that the Motion for Summary Judgment filed by defendant Metropolitan Government of Nashville and Davidson County be granted. (Docket No. 105) The *pro se* plaintiff filed Objections (Docket No. 108), to which defendant Metro has responded (Docket No. 115). Because the Magistrate Judge's recommendation relates to a dispositive matter, this court must make a *de novo* determination as to those portions of the Report and Recommendation to which specific objection has been made. 28 U.S.C. § 636(b)(1)(C); Rule 72(b), FED.R.CIV.P.; *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).

The Magistrate Judge correctly held that the only specifically named defendant left in this case is the Metropolitan Government. (Docket No. 105 at 2, n.3) The Magistrate Judge correctly set out the law governing liability under 42 U.S.C. § 1983 against a municipal government and held that the plaintiff has failed to establish his § 1983 cause of action against defendant Metro because he has failed to allege that his constitutional rights were violated

1

pursuant to policies adopted and promulgated by Metro. (*Id.* at 5) In fact, what the plaintiff has proffered to the court are numerous policies that have been adopted to safeguard the constitutional rights of inmates. His allegations are that these numerous policies were violated by individual Metro actors, but he has consistently failed to identify who these putative individual defendants would be and add them as defendants in this case. In his Objections, the plaintiff claims that defendant Metro has failed to give him the names of these individuals and that he should be given additional time to pursue discovery and to again amend his complaint to add these Metro actors. The tortured progress of this case weighs heavily against giving the plaintiff yet another such opportunity.

This case was filed on April 4, 2005 by attorney Brent Horst on behalf of the plaintiff. (Docket No. 1) At the initial case management conference held on June 6, 2005, a discovery deadline of October 14, 2005[1] was established (Docket No. 11), and the case was set for a jury trial on April 25, 2006 (Docket No. 13). After filing an unopposed motion to file an amended complaint (Docket No. 14), the plaintiff, through attorney Horst, filed an Amended Complaint that dropped Sheriff Daron Hall as a defendant but did not name any other individuals as defendants (Docket No. 16). The Amended Complaint was filed on July 12, 2005. In a Motion to Suspend Scheduling Order filed August 24, 2005, attorney Horst recited that he had received written discovery responses from defendant Metro but was encountering difficulties in financing the depositions needed for medical proof to establish the plaintiff's damages. (Docket No. 18) He requested a 60-day suspension of applicable deadlines and that a case management

---

[1] The court notes that Mr. Simpson's first lawyer thought that all necessary discovery could be completed within a period of four months.

conference be held. That motion was granted. (Docket No. 19) During the suspension period, Mr. Horst filed a Motion to Withdraw (Docket No. 20) that, over the plaintiff's objection (Docket No. 24), was granted on October 5, 2005. (Docket No. 25) All action in the case was stayed for sixty (60) days to allow Mr. Simpson to secure new counsel. (Docket No. 25) Mr. Simpson did not secure new counsel within the 60-day period and, on December 20, 2005, this court lifted the stay and referred the case to the Magistrate Judge for case management (Docket No. 26), as is this court's practice when a *pro se* party is involved.

It was at this point that this case went seriously "off track." Mr. Simpson began a campaign of making e-mail and other threats against various parties and attorneys and was ordered to cease such activities by the court on February 13, 2006. (Docket No. 32) Mr. Simpson failed to do so, defendant Metro filed a Motion for Contempt (Docket No. 33), and the court scheduled a show cause hearing for April 14, 2006 (Docket No. 37). When Mr. Simpson failed to appear at the hearing, a bench warrant was issued for his arrest (Docket No. 38) and, after sending several letters to the court, Mr. Simpson was finally arrested on July 18, 2006 (Docket No. 52). A hearing on the contempt was held on August 15, 2006, and the court held that the punishment for his contempt was the month-long custody he had endured since being arrested. Mr. Simpson was sent back to Butte, Montana by the United States Marshal at the Marshal's expense, and Mr. Simpson was ordered to notify the court by September 22, 2006 of his intent to pursue or not pursue this civil case further. (Docket No. 53)

After receiving letters from Mr. Simpson on August 30, 2006 (Docket No. 54) and on September 11, 2006 (Docket No. 57), expressing his desire not to continue with this civil case, the court dismissed the case on September 12, 2006 (Docket No. 58). However, for whatever

3

reason, Mr. Simpson resumed his threatening activities and, on September 20, 2006, the case was reopened (Docket No. 59), and another bench warrant was issued for his arrest. (Docket No. 60) At this point, the United States Attorney's Office filed criminal contempt charges against Mr. Simpson (Docket No. 63), and a criminal case was opened–Case No. 3:06-cr-00177. Attorney Kathleen Morris was appointed to represent Mr. Simpson on the criminal contempt charges, Mr. Simpson pled guilty to the charges and, on October 13, 2006, he was sentenced to one year of probation.

Because Ms. Morris appeared to have established a rapport with Mr. Simpson, and because Ms. Morris accepts court appointments in civil rights cases, the court requested that she consider representing Mr. Simpson in the civil case.[2] Ms. Morris declined, but the court ordered that, by December 4, 2006, the plaintiff, through Ms. Morris, file a status report that informed the court, once again, whether or not he wished to proceed with his civil case. (Docket No. 65) The status report was filed (Docket No. 66), indicating an interest in moving forward with the case, and Mr. Simpson requested appointment of new counsel to represent him (Docket No. 67). The court granted that motion (Docket No. 68), and on December 13, 2006 attorney Suzette Peyton was appointed to represent the plaintiff in this civil case (Docket No. 69).

After the appointment of Ms. Peyton, a case management conference was held on January 26, 2007, at which a new discovery deadline of August 1, 2007 was established (Docket No. 71), and a new jury trial date of March 11, 2008 was set (Docket No. 72). Some five months later (five months during which, presumably, discovery was moving forward), Ms. Peyton filed a

---

[2]The wisdom of this court's giving Mr. Simpson another opportunity to pursue his civil claims at this point, after these developments, can be severely questioned.

4

Motion to Withdraw, asserting, in part, "The plaintiff views his case drastically differently from the way I view the case based on the pleadings and the investigation and discovery I have conducted to date." (Docket No. 75 at 1)  This motion was filed on June 25, 2007, no objection or filing was made by Mr. Simpson and, on July 20, 2007, the court granted Ms. Peyton's Motion to Withdraw (Docket No. 76).  This court, being of the view that Mr. Simpson had had sufficient time within which to engage in discovery since the case was filed through representation by two different lawyers, ordered that he comply with the prevailing case management order and complete discovery by August 1, 2007.

   Mr. Simpson filed no motion requesting a stay of the case so that he could secure new counsel, nor did he file a motion requesting that the discovery deadline be extended.  He argues in his objections that he was prevented from engaging in discovery due to the terms of his probation on the criminal contempt charge.  (Docket No. 108 at 11, 14)   However, that assertion has no merit.  A special condition of Mr. Simpson's probation was that he "have no contact with the Court or parties to the lawsuit bearing Case No. 3:05-0274 except through attorneys representing the parties to that action."  (Case No. 3:06-cr-00177, Docket No. 6 at 3)  No contact with the court meant no further voice mails or letters sent directly to this judge.  No contact with the parties to the lawsuit meant no voice mails, e-mails or direct communications with individuals whose actions Mr. Simpson complains of in this case (though they remained unnamed).  Mr. Simpson was not foreclosed from acting as his own lawyer and dealing with Metro's attorneys on discovery matters.  Even if Mr. Simpson erroneously interpreted this special condition to mean that he was somehow hampered in continuing to pursue discovery for the 11 days remaining in the discovery period after the granting of the Motion to Withdraw,

5

nothing prevented him from filing a proper motion with the court, seeking a suspension of deadlines or an extension of the discovery deadline, all of which he failed to do.

On September 28, 2007, defendant Metro filed its Motion for Summary Judgment. (Docket No. 80) The Magistrate Judge correctly found that the only admissible evidence tendered by Mr. Simpson in opposition to this motion was portions of the Affidavit of his mother, Rosemary Simpson (Docket No. 91). Certainly Mrs. Simpson's observations of her son's medical condition following his incarceration at the Metro jail and her witnessing of his alleged suicide attempt prior to the incarceration would be admissible, as those are matters about which she has direct personal knowledge. However, her statements relating to what happened to Mr. Simpson while he was in the jail and her account of what various people said to Mr. Simpson at various times related to this case are all hearsay and are not matters about which she has personal knowledge. Because nothing in Mrs. Simpson's Affidavit successfully counters the arguments advanced by defendant Metro in its Motion for Summary Judgment, the Magistrate Judge correctly found that Metro's motion should be granted. Summary judgment on the § 1983 claim in favor of defendant Metropolitan Government, therefore, is appropriate, and the plaintiff's Objections are **OVERRULED**.

The court has found that the plaintiff's federal claim should be dismissed, and the federal claim was the basis for this court's original jurisdiction over the case. When those claims giving the court its original jurisdiction have been dismissed, the court may properly decline to exercise supplemental jurisdiction over any pendent state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966); *Novak v. MetroHealth Medical Center*, 503 F.3d

6

572, 583 (6th Cir. 2007). This court routinely declines to exercise supplemental jurisdiction in these circumstances. Therefore, state law claims will be dismissed as well.

The Report and Recommendation is **ACCEPTED** and made the findings of fact and conclusions of law of this court. For the reasons expressed therein and herein, defendant Metro's Motion for Summary Judgment (Docket No. 80) is **GRANTED**, and this case is **DISMISSED**. The pretrial conference scheduled for March 7, 2008 and the trial scheduled for March 11, 2008 are **CANCELLED**. The plaintiff's Motion to Compel (Docket No. 107) is **DENIED AS MOOT**.

It is so **ORDERED.**

Enter this 16th day of January 2008.

_____
ALETA A. TRAUGER
U.S. District Judge